IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| NICHOLAS BARRETT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 21-cv-3250 |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

This is an action under 42 U.S.C. § 405(g) for judicial review of the denial of Plaintiff's claim for social security benefits. Before the Court are Plaintiff's Motion for Summary Judgment (Doc. 12) and Defendant's Motion for Summary Affirmance (Doc. 14).

**I.    BACKGROUND**

In January 2015, Plaintiff Nicholas Barrett filed a prior Title II application and a prior Title XVI application wherein he alleged disability beginning on March 1, 2013. (Doc. 12-1, Notice of Decision–Unfavorable, 1, 3.) After a video hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision on November 9, 2017. (*Id.* at 4-23.)

On November 1, 2019, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security

income. (R. 13.) Following a telephone hearing, the ALJ entered an unfavorable decision on July 6, 2021. (R. 10, 13.)

In the 2017 decision, the ALJ found Plaintiff had not engaged in substantial activity since his alleged onset date on March 1, 2013. (Doc. 12-1, 26.) Between March 1, 2013 and June 16, 2015, Plaintiff was determined to have the following severe impairments: left ankle degenerative joint disease status-post fusion and obesity. (*Id.*) As of June 16, 2015, Plaintiff's left ankle degenerative joint disease status-post fusion and obesity remained severe, and major depressive disorder was also present. (*Id.*) The ALJ found that, for the entire period in question, none of Plaintiff's impairments either alone or in combination met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff was determined to have the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (*Id.* at 27.)

In the 2021 decision, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date on November 17, 2017, at which time he was 46 years old. (R. 16, 22.) Plaintiff had the following severe impairments: obesity and arthritis in the left ankle. (R. 16.) The ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17.) In addition, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs, but never ladders, ropes and scaffolds; and occasionally balance, stoop, kneel, crouch and crawl. He can tolerate occasional exposure to

and can occasionally work around extreme cold and heat, vibration and hazards such as moving machinery or unprotected heights.

(R. 18.) The ALJ further found that, while Plaintiff is unable to perform any past relevant work as an Industrial Truck Operator, jobs exist in significant numbers in the national economy that he can perform. (R. 21-22.) Therefore, the ALJ found Plaintiff had not been disabled since November 17, 2017. (R. 23.)

Plaintiff filed a timely Request for Review of Hearing Decision/Order with the Appeals Council. (R. 228-230.) The Appeals Council denied Plaintiff's Request for Review, thereby rendering it the Agency's final decision for purposes of judicial review. (R. 1.)

Plaintiff argues the ALJ committed the following errors: (1) used a heightened credibility standard; (2) cherry-picked certain evidence; and (3) engaged in faulty reasoning in finding Plaintiff had not worsened since his prior application. (Doc. 12, 6-7.)

II.   DISCUSSION

   A. Legal Standard

A claimant is considered disabled only upon showing an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). It is generally the claimant's burden to prove disability. 20 C.F.R. § 404.1512(a); *See Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). A claimant must show his impairments "are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration applies the statutory standard by employing a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). The claimant has the burden of production at steps one through four. 20 C.F.R. § 404.1520(a)(4)(i)-(iv); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant meets his burden of proving disability, the agency must produce evidence of jobs existing in significant numbers that the claimant can perform given her age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1520(a)(4)(v); *Id.* at 146 n.5.

When, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner. *See Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). The Act specifies that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014) (citations omitted). Although the task of a court is not to re-weigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate conclusion." *Id.* at 856-57. The ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Schmidt v. Barnhart*, 395

F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted). A court does not "resolve conflicts or decide questions of credibility." *L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019).

### B. ALJ's Credibility Analysis

Plaintiff contends the ALJ inappropriately used a higher standard than is required in stating "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 19.) Specifically, Plaintiff argues the "not entirely consistent" language means the ALJ required the evidence to be entirely consistent with his claims about his symptoms instead of using the appropriate preponderance of the evidence standard. (Doc. 12, 6.) "The 'not entirely consistent' language is meaningless and a problem, however, only if the ALJ does not identify and explain the relevant inconsistencies or other reasons for discounting the subjective complaints." *Hostetter v. Saul*, 841 F. App'x 983, 986-87 (7th Cir. 2021).

In this case, the ALJ found Plaintiff's statements about his symptoms to be "inconsistent because the record does not show worsening" since his application. (R. 19.) The ALJ further described Plaintiff's treatment through his primary care physician to be "limited" with documentation of "minimal abnormalities." (*Id.*) The ALJ noted Plaintiff's primary care physician neither documented the use of an assistive device to ambulate nor recommended the elevation of his legs to avoid swelling. (*Id.*) Plaintiff alleges a symptom assessment that extends only so far as "the records support" is insufficient under SSR 16-3p which requires the ALJ to examine "the entire case record," including

the objective medical evidence, the claimant's statements, and statements by other medical sources and persons. Social Security Ruling 16-3p Titles II and XVI: Evaluation of Symptoms in Disability Claims, 82 Fed. Reg. 49462, 49464 (Oct. 25, 2017). (*Id.*) Plaintiff further asserts the ALJ simply recites some testimony and relies by default on the narrowest reading of the medical record without explaining what limitations or symptoms are credible and why. (*Id.*) Plaintiff contends that, in discrediting Plaintiff, the ALJ recites boilerplate language and almost exclusively cites objective testing instead of considering all relevant factors. (*Id.* at 6-7.)

A court disturbs the ALJ's credibility finding only if it is "patently wrong." *Burmester v.* Berryhill, 920 F.3d 507, 510 (7th Cir. 2019). The Court will affirm the ALJ's credibility finding so long as the ALJ "gives specific reasons that are supported by the record." *Skarbeck v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). The record shows that the ALJ addressed Plaintiff's ability to work despite his severe ankle arthritis and obesity. (R. 18-21.) The ALJ considered Plaintiff's assertion of disabling pain but found that, while the record showed certain limitations, it did not show that he was unable to work. (*Id.*) The ALJ's decision addresses Plaintiff's description of his symptoms at the hearing and to his providers, his treatment history, physical examinations, medication, and treatment other than medication. (*Id.*) The ALJ provided reasons that are supported by the record which is what is required under SSR 16-3p and 20 C.F.R. 404.1529. Plaintiff points to no specific errors by the ALJ in assessing credibility. Therefore, the Court finds no error with the ALJ's credibility analysis.

### C. ALJ's Consideration of Record

Plaintiff next contends the ALJ erred in her primary explanation for discrediting Plaintiff by relying on her finding that "the record does not show worsening since the claimant's prior application." (Doc. 12, 7.) While the ALJ previously denied Plaintiff's prior application for disability benefits due to his ankle injury, *see Barrett v. Saul*, 822 F. App'x 493 (7th Cir. 2020), the period under consideration in this case began on November 17, 2017. (R. 16.). Plaintiff claims the ALJ places undue emphasis on how bad Plaintiff's condition was at the time of his January 2015 application as compared with his current application. (Doc. 12, 7.) Additionally, the ALJ leans on the "inherent correctness" of the prior ALJ's decision without considering the record before that ALJ. (*Id.* at 8.) Defendant suggests the ALJ discussed the time period of the earlier application in order to show the record did not indicate Plaintiff's condition had worsened to an extent that it would support a disability finding. (Doc. 14-1, 4.)

In noting Plaintiff's condition had not appeared to worsen, the ALJ stated Plaintiff had undergone very limited treatment through his primary care physician who had typically documented minimal abnormalities. (R. 19.) Dr. Gindi did not document an inability for Plaintiff to ambulate or a need to elevate his legs. (*Id.*) The ALJ further cited Plaintiff's August 2017 examination with Dr. Gindi (three months before the period under consideration) where the only recorded abnormality was left ankle swollenness with no tenderness. (R. 20, 502-03.) The ALJ stated that, even though Plaintiff testified he remained in bed most of the time and needed to elevate his foot, the records did not support Plaintiff's condition had worsened significantly. (R. 20.) The ALJ noted Plaintiff's

September, November, and December 2017 exams were the same as the August 2017 examination showing only left ankle swelling with no tenderness. (R. 20, 496-500.) The ALJ noted Plaintiff reported in his January 2018 examination that his pain was at a 3 out of 10 at rest. (R. 20, 495.) The ALJ further noted that in February 2018, Plaintiff had a limited range of motion in his left ankle but no swelling or tenderness. (R. 20, 494.) The ALJ stated that by July 2018, Plaintiff claimed his left ankle pain had increased to 6 out of 10 and was stabbing and throbbing. (R.20, 488.)

Treatment records cited by the ALJ demonstrated that Plaintiff's physical examination and medication regimen had not changed by January, February and April 2019. (R. 20, 480-84.) The ALJ noted Dr. Gindi in February 2019 found no abnormalities in Plaintiff's musculoskeletal system. (R. 20, 491.) In April 2019, Plaintiff reported his medications were working well. (*Id.*) The ALJ stated that, while Plaintiff ran out of medication in June 2019, he still reported that his pain was a 5 out of 10. (R. 20, 479.). Plaintiff also reported his arthritis medication was helpful for pain in November 2019. (R. 20, 475, 552.)

The record shows the ALJ also considered Plaintiff's October 2020 examination with consultative examiner Afiz Taiwo, M.D., at which time Plaintiff presented with a cane and Dr. Taiwo noted Plaintiff needed a cane to walk within 40 feet. (R. 20-21, 536.) Dr. Taiwo observed Plaintiff could walk without a cane, but with a moderately antalgic gait. (*Id.*) The ALJ identified Dr. Taiwo's finding that Plaintiff could not heel to toe walk or tandem walk and had limited ankle range of motion on the left with swelling. (R. 21, 534-37.)

The ALJ stated that recent physical examinations with Plaintiff's doctor showed normal findings with no need for a cane. (R. 21.) The ALJ observed there were no changes in Plaintiff's medications during the period under consideration. (*Id.*) He took diclofenac and Norco which were effective. (*Id.*) The ALJ noted that the record did not support Plaintiff's assertion that he needed to elevate his legs since shortly after surgery, which was well before the period under consideration. (*Id.*) The Court concludes the ALJ's determination that Plaintiff could perform a range of light work with some limitations from his ankle impairment and obesity is reasonable based on the record.

Plaintiff's criticisms of the ALJ's reasoning are without merit. While Plaintiff contends the ALJ should not have considered whether his condition worsened during the period under consideration, he points to no error. (Doc. 12, 7-8.) Plaintiff does not allege the ALJ ignored any evidence or improperly considered the record in determining what Plaintiff could and could not do in the workplace. (*Id.*) Plaintiff also criticizes the ALJ's medication progression as indicative of a lack of significant worsening and questions that factor's relevance. (*Id.* at 8-9.) Plaintiff notes Norco was not even prescribed until a June 2, 2017, exam and, therefore, was not part of the record for the prior ALJ. (*Id.* at 9.) Norco was first prescribed five months before the period under consideration. (*Id.*) The ALJ recognized she could not afford any weight to medical opinions and prior administrative findings that were covered by Plaintiff's prior application. (R. 21.) Plaintiff notes that diclofenac was first prescribed in January 2019, which suggests a significant worsening according to the ALJ's logic. (Doc. 12, 9.) However, the ALJ noted that Plaintiff's medication was working well in the months following January 2019. (R. 20.) The ALJ

acknowledged Plaintiff's continued ankle pain that resulted in functional limitations, and reasonably determined Plaintiff's ankle pain did not mean he was precluded from all types of work.

Plaintiff further alleges the ALJ should have considered Dr. Gindi's opinion from June 2, 2017, concerning inability to work. (Doc. 12, 10.) However, that opinion was rendered five months before the beginning of the period under consideration. The ALJ reasonably found that opinions rendered in connection with Plaintiff's prior application were not probative as to his current RFC. (R. 21.)

Additionally, Plaintiff contends the ALJ should have found his mental impairments to be severe. (Doc. 12, 10-13.) Plaintiff discusses the difficulties he endured as a child and criticizes the ALJ discounting any mental health issues because Plaintiff was not on mental health medication. (*Id.* at 10.) However, the ALJ provided an extensive explanation as to why she found Plaintiff's impairments were not severe. (R. 16-17.) The ALJ discussed a December 2020 consultative psychological exam with Jonathan Thomas-Stagg, Ph.D., wherein Dr. Thomas-Stagg diagnosed Plaintiff with depressive disorder, by history. (*Id.* at 16.) The ALJ stated the consultative internal medicine examiner noted Plaintiff was "appropriate, polite, pleasant, and cooperative with no signs of depression, agitation, irritability, or anxiety." (*Id.* at 17.) The ALJ noted Plaintiff's function report indicated he did not need reminders for personal needs, grooming, or medications. (*Id.*)

Plaintiff further argues the ALJ did not adequately consider Plaintiff's GAF score of 50, which Plaintiff notes reflects "serious symptoms" or "any serious impairment in social, occupational, or school functioning." The GAF score does not reflect a clinician's

opinion of functional capacity. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Moreover, neither the Social Security regulations nor case law requires an ALJ to determine the extent of a claimant's disability based entirely on his GAF score. *Id.*

The ALJ found Plaintiff "does not have a severe mental impairment of depression or anxiety as these impairments no more than minimally affect his ability to engage in basic work activities." (R. 17.) The ALJ considered the broad functional areas known as the "paragraph B" criteria, finding no more than "mild" limitation in any of the functional areas. (*Id.*) The ALJ further found the evidence did not otherwise indicate there is more than a minimal limitation in Plaintiff's ability to do basic work activities. (*Id.*) Therefore, the ALJ determined Plaintiff's limitations were non-severe. (*Id.*)

The ALJ determined that "the prior administrative findings of the state agency mental consultants are persuasive finding no evidence of a severe mental impairment." (R. 17.) This finding was based on a "general lack of treatment during the relevant periods—either prior to or subsequent to the date last insured." (*Id.*) Because there were no new records pertinent to the relevant period, the ALJ found the existing records to be persuasive. (*Id.*) The ALJ noted the prior administrative findings indicated Plaintiff had secondary depression arising from his physical limitations, which was supported by the record. (*Id.*) The ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.*)

Plaintiff does not point to any specific defects in the ALJ's reasoning regarding Plaintiff's mental impairments. Upon considering the record, the Court finds no error with the ALJ's assessment of the mental health evidence.

## III. CONCLUSION

In summary, the Court has reviewed all of Plaintiff's arguments and concludes that the ALJ properly applied the law and supported her decision with substantial evidence. The Court concludes Plaintiff did not meet his burden under 42 U.S.C. § 423(d)(5)(A) to prove disability. For these reasons, Plaintiff's Motion for Summary Judgment [Doc. 12] is DENIED, and Defendant's Motion for Summary Affirmance [Doc. 14] is GRANTED. The Commissioner's Decision is AFFIRMED. The Clerk of Court is directed to enter Judgment in favor of Defendant. This case is terminated.

ENTER: September 21, 2023

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE